**19 MAG 12015**

Approved: _____
          JESSICA FENDER
          Assistant United States Attorney

Before:   HONORABLE BARBARA C. MOSES
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

        - v. -

FERNANDO RODRIGUEZ,

                    Defendant.

- - - - - - - - - - - - - - - - - - x

**SEALED COMPLAINT**

Violations of
18 U.S.C. §§ 1347,
1349

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

        LAVALE JACKSON, being duly sworn, deposes and says that he is a Special Agent with the United States Attorney's Office for the Southern District of New York ("USAO"), and charges as follows:

**COUNT ONE**
(Conspiracy to Commit Health Care Fraud)

        1.   From at least in or about 2012, up to and including at least in or about 2018, in the Southern District of New York and elsewhere, FERNANDO RODRIGUEZ, the defendant, and others known and unknown, knowingly and willfully did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Title 18, United States Code, Section 1347.

        2.   It was a part and object of the conspiracy that FERNANDO RODRIGUEZ, the defendant, and others known and unknown, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, namely Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
(Health Care Fraud)

3. From at least in or about 2012, up to and including at least in or about 2018, in the Southern District of New York and elsewhere, FERNANDO RODRIGUEZ, the defendant, knowingly and willfully did execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, namely Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, to wit, RODRIGUEZ and a co-conspirator ("CC-1") submitted and caused to be submitted to Medicaid numerous eligibility applications that falsely represented his and CC-1's income in order to fraudulently obtain insurance benefits and claim payments to which RODRIGUEZ and CC-1 were not entitled.

(Title 18, United States Code, Sections 1347 and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Special Agent with the USAO and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview

5. From in or about 2012 up to and including in or about 2018, FERNANDO RODRIGUEZ, the defendant, conspired to commit, and did commit, health care fraud by making false statements and representations to New York State and New York City about his annual household income. Based on the misrepresentations

made by RODRIGUEZ and co-conspirator CC-1, RODRIGUEZ and his dependents received health insurance fully subsidized by the taxpayer-funded Medicaid program and received various medical services that led to claims totaling more than $65,000.00

### Background of the Medicaid Program

6.   Based on my training and experience, my participation in this investigation, my review of publicly available webpages administered by the United States Department of Health and Human Services ("HHS") and the New York State Department of Health ("NYSDOH"), and my conversation with a NYSDOH employee who is involved in administering the State's Medicaid program ("Employee-1"), I have learned, among other things, the following about the Medicaid program:

a.   Medicaid is a federal health care program that provides benefits to individuals and families who meet financial and other eligibility requirements.  Medicaid is administered by a federal agency under HHS.  Individuals who receive benefits under Medicaid are referred to as "beneficiaries."

b.   In New York, the Medicaid program is funded both by the federal government and the State of New York.  The federal government provides 50 percent of the funding necessary to pay Medicaid claims, and the State of New York provides the remaining 50 percent.

c.   Medicaid is considered a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

d.   In general, individuals and families in New York State can qualify for Medicaid if their annual household income, which includes both wages and certain public benefits (including, for example, unemployment payments), is below specified percentages of the federal poverty level.

e.   Between in or about 2012 through in or about 2015, individuals living in New York City applied for Medicaid by submitting written applications to the City's Human Resources Administration.  On those applications, individuals were required to certify, among other things, their income as well as that of other members of their household.  The signature section of those applications contained a paragraph stating, in substance and in part, "I certify under penalty of perjury that everything on this application is the truth as best I know."

f.   Following the passage of the federal Affordable Care Act in or about 2015, New York State developed an Internet website called "New York State of Health," which is an online marketplace where individuals can, among other things, purchase certain health insurance plans and manage their health coverage.  Individuals can also apply for Medicaid using an online application on the New York State of Health website.  Individuals can fill out those online applications on their own or can enlist the help of a registered "assistor," who receives the relevant information from the applicants and helps them enter that information in the online form and submit the form.  On those online applications, individuals are required to certify, among other things, their income as well as that of other members of their household.

g.   Individuals who qualify for Medicaid may enroll in fully subsidized health insurance plans administered by third-party insurance companies.  Beneficiaries incur claims when they visit medical providers and receive services.  Medical providers, in turn, receive payment for those services by submitting claims to Medicaid.

### RODRIGUEZ's Medicaid Fraud

7.   Based on my review of bank records, the publicly available biography of FERNANDO RODRIGUEZ, the defendant, posted on the website of the Latin / African American Chaplain Association – State of New York ("LACA," online at www.lacasny.org), emails obtained pursuant to judicially authorized search warrants on RODRIGUEZ's personal and business email accounts, and publicly available property records maintained by the New York City Department of Finance's Office of the City Register (the "City Register"), I learned, among other things, the following:

a.   RODRIGUEZ is the owner and/or president of several different organizations, including at least three construction companies -- specifically, RJP Realty Development Corporation ("RJP Realty"), the F. Rodriguez Corporation ("FRC"), and R&S Construction & Development Corporation ("R&S Construction") -- as well as the LACA organization and a religious organization called the One Way to Heaven Christian Church ("One Way to Heaven," and collectively with RJP Realty, FRC, R&S Construction, and LACA, the "Rodriguez Companies").

4

b.    CC-1 is RODRIGUEZ's spouse and is, among other things, the vice president of LACA, the secretary of One Way to Heaven, and an authorized signer on the business bank accounts of FRC and R&S Construction.

8.    Based on my review of bank records related to the Rodriguez Companies, I learned, among other things, that FERNANDO RODRIGUEZ, the defendant, and CC-1 withdrew more than $1 million in the five-year period between in or about 2013 through 2018 from bank accounts of the Rodriguez Companies that are owned and operated by RODRIGUEZ and CC-1.   In particular, I learned the following:

a.    RODRIGUEZ received checks totaling at least approximately $1.2 million from a RJP Realty bank account (the "RJP Account") in the five-year period between in or around June 2013 through August 2018, which averages to approximately $240,000 per year.   Those checks fell into three broad categories: (1) salary or payroll, (2) credit card reimbursements, and (3) "donations."

i.    _Salary:_  The RJP Account paid RODRIGUEZ a salary of at least approximately $1,000 or more most months beginning in or about late 2013.   For example, on or about September 29, 2016, a check for approximately $1,000 was drawn on the RJP Account and made out to RODRIGUEZ, with a memo line stating, in sum and substance, "1099 Payroll."   Based on my training and experience, and my review of the website of the Internal Revenue Service ("IRS"), I know that "1099" is shorthand that refers to IRS Form 1099-MISC, which employers use to record salary payments made to their independent-contract employees. Other similar memo lines made clear that RODRIGUEZ was being paid for his work at RJP Realty.   For instance, on or about January 5, 2017, a check for approximately $1,000 was paid to RODRIGUEZ, with a memo line stating, "For work as Supervisor."   The records of the RJP Account contained dozens of similar checks written to RODRIGUEZ, all purporting to pay his "payroll" or "salary" for his work for RJP Realty.

ii.    _Credit Card Reimbursements:_  The RJP Account also wrote approximately 41 checks to RODRIGUEZ that were supposedly reimbursements for credit card expenses, with memo lines such as "For Credit Card Payment," "Credit Card Payment," and "RJP Supplies Card Payment."   The total value of those checks was at least approximately $598,000 between in or about 2016 and 2018.   Based on my review of records of both bank accounts and credit card accounts belonging to RODRIGUEZ, I learned, among other

things, that RODRIGUEZ sometimes deposited "credit card payment" checks into his personal bank account (the "Rodriguez Account"). RODRIGUEZ also used money from the Rodriguez Account to pay a personal credit card opened in his own name rather than that of RJP Realty (the "Rodriguez Credit Card"). Based on my review of records of the Rodriguez Credit Card, I believe that RODRIGUEZ used the Rodriguez Credit Card to pay for both RJP Realty expenses as well as personal living expenses. For example, between in or about 2016 and 2018, statements of the Rodriguez Credit Card reflect purchases each month at numerous companies with no obvious connection to construction, including a jewelry store, fast food restaurants, an airline, and a supermarket, among others.

       iii.   *Donations:*  The RJP Account also paid out "donations" to RODRIGUEZ. For example, on or about April 26, 2017, a check for approximately $2,800 was paid to RODRIGUEZ, with a memo line stating, in sum and substance, "Donation."

       b.   The RJP Account also paid CC-1. For example, on or about November 22, 2013, a check for approximately $2,580 was paid to CC-1, with a memo line stating "Pay Roll Wk 11/22/13." CC-1 continued to receive periodic payments from the RJP Account throughout the years 2014 through 2017. In addition, there were also checks paid to CC-1 and drawn on the RJP Account that appeared to pay for the private grade-school tuition for RODRIGUEZ and CC-1's minor son (the "Son"). For instance, there was a check dated on or about February 2, 2017 that paid approximately $5,126 to CC-1 with a memo line stating "school tution [*sic*] 2017/2018 [Son's name]."

       c.   In addition, RODRIGUEZ and/or CC-1 withdrew a total of approximately $164,855 in cash and checks from the bank account of FRC between in or around January 2017 through April 2017.

       d.   RODRIGUEZ and/or CC-1 paid the approximately $2,200-monthly rent on their personal home out of a bank account for One Way to Heaven. Beginning at least in or around November 2013 through August 2018, a check of approximately $2,200 was written almost every month to the order of a particular individual ("Individual-1"). Many of the checks to Individual-1 included the memo line "Rent." In the opening documents for the One Way to Heaven Account and the RJP Account, RODRIGUEZ and CC-1 indicated that their "Home Address" was an address on Lamport Place in the Bronx (the "Lamport Place House"). City records show that Individual-1 is the owner of the Lamport Place House.

9.   Based on my review of Medicaid applications submitted by FERNANDO RODRIGUEZ, the defendant, and CC-1, my conversation with a NYSDOH employee who is involved in administering the State's Medicaid program ("Employee-2"), and my conversation with a NYSDOH employee who manages the New York State of Health website ("Employee-3"), I learned, among other things, that -- in spite of the hundreds of thousands of dollars that RODRIGUEZ and CC-1 received from bank accounts of the Rodriguez Companies between at least in or about 2013 and 2018 -- RODRIGUEZ and CC-1 repeatedly certified to NYSDOH and HRA that their individual and combined incomes were no greater than $24,000 per year.   In fact, starting in or about 2017, RODRIGUEZ and CC-1 remained eligible for Medicaid because their Medicaid application reported a total annual household income of *zero*.   Specifically:

a.   RODRIGUEZ first applied for Medicaid in or around July 2012 and was deemed eligible for a type of government subsidized health insurance.   In or around September 2014, RODRIGUEZ became fully eligible for Medicaid, at which time he received free health insurance funded entirely by the federal and state governments.   RODRIGUEZ remains in the Medicaid program to this day.

b.   Meanwhile, CC-1, who was already married to RODRIGUEZ, separately applied for Medicaid in or around June 2012 and was deemed eligible for a type of government subsidized health insurance.   CC-1 did not have any government subsidized health insurance between in or around March 2013 to February 2015.   Then, in or around February 2015, CC-1 was deemed fully eligible for Medicaid and has remained in the Medicaid program to this day.

c.   On or about July 16, 2012, RODRIGUEZ, with the assistance of an employee of a third-party insurance company that participates in the Medicaid program, signed and submitted an application to HRA on which he certified, among other things, that he had no income at all.

d.   Subsequently, RODRIGUEZ submitted renewal applications to HRA on or about April 26, 2013 and May 1, 2014 on which RODRIGUEZ certified that there was "No Change" to the information he had previously submitted on his July 2012 application.   Above RODRIGUEZ's signature on both forms, the renewal form stated, in substance and in part, "I certify under penalty of perjury that everything on this application is the truth as best I know."

e.   In or around March 2015, RODRIGUEZ and CC-1's application for Medicaid, which was submitted by an assistor,

stated, in substance and in part, that their combined household income was approximately $18,000.  After the New York State of Health online system requested that RODRIGUEZ and CC-1 submit additional documentation regarding their reported incomes, they provided a letter to NYSDOH dated May 13, 2015 from the "Christine [*sic*] Church One Way to Heaven" that stated, in substance and in part, "Please note that Bishop Fernando Rodriguez and [CC-1] are the pastors at One Way to Heaven Church. . . . The church gives our pastors (Bishop/[CC-1]) a sty-ping [*sic*] of $1800.00 a month" -- which is approximately $21,600 per year.  In fact, RODRIGUEZ and CC-1 together received hundreds of thousands dollars in or about 2014 and 2015 from the Rodriguez Companies.

f.  Subsequently, on or about June 22, 2017, an assistor submitted four consecutive Medicaid applications, all on the same day, on behalf of RODRIGUEZ and CC-1.  On the first three applications, the applications reported RODRIGUEZ and CC-1's combined annual income to be approximately $21,600, $10,800, and $24,000, respectively.  Each time, the New York State of Health online system automatically responded, in sum and substance, that it could not "determine your eligibility until we can confirm the information in your application.  We either need further information or the information you provided does not match what the NY State of Health obtained from state and federal data sources.  You must provide additional documentation by the due date(s) listed below in order for your eligibility to be determined."  Then, on the fourth, and final, application, RODRIGUEZ and CC-1's combined annual income was reported to be *zero*.  This time, the New York State of Health online system automatically responded for each of RODRIGUEZ, CC-1, and their Son, "You are eligible for Medicaid. . . . Annual Household Income - $0.00."  In fact, RODRIGUEZ and CC-1 together received hundreds of thousands dollars in or about 2016 and 2017 from the Rodriguez Companies.

g.  The following year, on or about May 18, 2018, RODRIGUEZ and CC-1's application again reported that their annual household income was "$0.00" and they remained eligible for Medicaid.  A letter from NYSDOH dated on or about May 19, 2018 was mailed to CC-1 at the Lamport Place House that stated, in substance and in part, that RODRIGUEZ, CC-1, and their Son "[r]emain eligible for Medicaid."  In a section of the letter titled "How We Made Our Decision," the letter explained, in substance and in part, "Because your household income of $0.00 is at or below the allowable income limit of $28,677.00, you are eligible for Medicaid."  In fact, RODRIGUEZ and CC-1 together received hundreds of thousands dollars in or about 2017 and 2018 from the Rodriguez Companies.

10.   Based on my review of federal tax records related to FERNANDO RODRIGUEZ, the defendant, I learned, among other things, that RODRIGUEZ and CC-1 filed a joint federal tax return for the year 2014 on which they claimed a total combined income of approximately $33,090.   Furthermore, RODRIGUEZ did not file personal tax returns for the years 2015, 2016, and 2017.   In addition, no federal tax returns were filed for RJP Realty, LACA, or One Way to Heaven for any of the years 2014, 2015, 2016, or 2017.

11.   Meanwhile, based on my review of records of automobile manufacturer's credit company, I learned, among other things, that FERNANDO RODRIGUEZ, the defendant, represented on automobile loan applications in or around March 2011, July 2015, and December 2017 that he earned approximately $9,000 per month, or about $108,000 per year -- far more than the annual income reported on RODRIGUEZ and CC-1's various Medicaid applications.

12.   Between in or around September 2014 and the end of 2018, RODRIGUEZ and his dependents received various medical services pursuant to his fully government subsidized Medicaid health insurance that cost the federal, state and local government over $41,000.00.

WHEREFORE, deponent respectfully requests that a warrant issue for the arrest of FERNANDO RODRIGUEZ, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

LAVALE JACKSON
Special Agent
U.S. Attorney's Office

Sworn to before me this
26 day of December, 2019

HONORABLE BARBARA C. MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK